UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JANET WASHINGTON,

                                Plaintiff,

       -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
JEFFREY SANTIAGO, as principal of C.S. 67,
DONNA FERGUSON, as assistant principal at C.S. 67,
and CARMEN NORIEGA, as assistant principal at C.S. 67,

                          Defendants.
-------------------------------------------------------------------X

**Index No.:**    **16-cv-9588**

**<u>COMPLAINT</u>**

**<u>DEMAND FOR JURY TRIAL</u>**

        Plaintiff, Janet Washington ("Plaintiff" or "Washington"), by and through her attorneys, Ballon Stoll Bader & Nadler, P.C. complaining of Defendants New York City Department of Education ("DOE"), Jeffrey Santiago, as principal of C.S. 67 ("Santiago"), Donna Ferguson, as Assistant Principal at C.S. 67 ("Ferguson"), and Carmen Noriega, as Assistant P`rincipal at C.S. 67 ("Noriega") (collectively the "Defendants"), alleges with personal knowledge, unless where upon information and belief is stated, the following:

        1.      This action is brought to remedy the Defendants' intentional, unlawful discrimination (due to disability), harassment, and retaliation against Plaintiff, leading to Plaintiff's termination, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 et seq., the Executive Law of the State of New York, New York State Human Rights Law ("Executive Law") § 296, et seq., and the Administrative Code of the City of New York, New York City Human Rights Law ("Administrative Code"), § 8-101, et seq.

## THE PARTIES

2.      Plaintiff was employed by the New York City Department of Education ("DOE") as a first – fourth grade teacher from September of 2000 until March 24, 2016.

3.      Plaintiff is an individual residing in the State of New York, County of the Bronx.

4.      The DOE is the local government authority in charge of the New York City public school system.

5.      Upon information and belief, Defendant Jeffrey Santiago ("Mr. Santiago"), is the Principal of C.S. 67, with offices at 2024 Mohegan Avenue, Bronx, New York 10460, and is responsible for supervising the teachers and administrators at C.S. 67.

6.      Upon information and belief, Defendant Donna Ferguson ("Ms. Ferguson") is an Assistant Principal at C.S. 67, with offices at 2024 Mohegan Avenue, Bronx, New York 10460, and is responsible for observing teachers and issuing rubric ratings.

7.      Upon information and belief, Defendant Carmen Noriega ("Ms. Noriega") is an Assistant Principal at C.S. 67, with offices at 2024 Mohegan Avenue, Bronx, New York 10460, and is responsible for observing teachers and issuing rubric ratings.

## PROCEDURAL BACKGROUND

8.      Plaintiff timely filed a charge of discrimination against Defendants (Charge No. 520-2016-01883) with the Equal Opportunity Employment Commission ("EEOC"), in which she alleged, inter alia, that Defendants discriminated against her on the basis of her disabilities in violation of the ADA.

        a.   Upon request from Plaintiff, the EEOC terminated its investigation, and on September 14, 2016, issued Plaintiff a Notice of Right to Sue (see Exhibit 1, attached hereto);

        b.   The instant action is timely because it is initiated within ninety (90) days of Plaintiff's receipt of the aforementioned Notice of Right to Sue; and

    c.  Plaintiff has exhausted her federal administrative remedies as concern the allegations of this Complaint.

9.    Plaintiff also timely served a Notice of Claim on or about June 21, 2016.

## JURISDICTION AND VENUE

10.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States.

11.    This Court has supplemental (pendent) jurisdiction over Plaintiff's New York State and New York City claims pursuant to 28 U.S.C. § 1267(a). The New York State and New York City discrimination claims are inexorably related to, arise out of the same operative facts and circumstances as, and are a necessary, integral part of the federal law claims, such that the federal claims and New York State and New York City law claims form part of the same case or controversy.

12.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) as events occurred in the Southern District of New York.

13.    Plaintiff is domiciled in the City of New York, borough of the Bronx, State of New York.

## FACTS

14.    Plaintiff is a female who suffers from Chronic Inflammatory Demyelinating Polyneuropathy and Obesity.

15.    Plaintiff began working at C.S. 67 in September of 2000.

16.    Plaintiff consistently performed her job duties satisfactorily and never received an ineffective or unsatisfactory rating.

<u>PLAINTIFF'S DISABILITIES</u>

17.    In 2006, Plaintiff became sick and was subsequently diagnosed with Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP").

18.    As a result of Plaintiff's CIDP, her legs became week and she had trouble with walking and coordination.

19.    Plaintiff also suffers from obesity, which is a recognized disability under the Americans with Disabilities Act (42 U.S.C. §§ 12111 et seq.), New York State Human Rights Law (Executive Law §292(20) et seq.), and New York City Human Rights Law (Administrative Code §8-106, et seq.). This disability also impairs some of Plaintiff's physical bodily functioning.

20.    On September 15, 2006, Plaintiff also had an accident at work, where she fell on a poorly waxed floor, which further contributed to her trouble walking.

21.    Plaintiff's physical therapist suggested that she limit the number of times she walks up and down the stairs at work, due to her disability – especially since her classroom was on the fourth floor, with seventy-eight (78) steps to climb.

22.    Plaintiff brought a letter from her doctor stating her limitations to the principal at the time, Emily Grimball ("Ms. Grimball").

23.    Ms. Grimball instructed Plaintiff to go to the medical office to request an accommodation.

24.    On September 28, 2007, Plaintiff requested a "no escort duty" accommodation.

25.    Plaintiff was granted her no escort duty accommodation on November 6, 2007. This accommodation meant that she would walk up the stairs once at the beginning of the school day and down the stairs once at the end of the school day. An aide or another teacher would assist her class to and from lineups, lunch, gym, and fire drills throughout the day.

26.     Plaintiff was also granted an accommodation of first floor classroom or an elevator in building.

27.     In February of 2008, Plaintiff broke her foot, and was out of work until June of 2008.

28.     When Plaintiff was ready to return to work she called the medical office and explained that she only wanted a no escort duty accommodation, and that she did not need or want a first floor classroom or elevator in building accommodation.

29.     Plaintiff did not want a medical transfer to a school with an elevator or a first floor classroom, and she did not need such a transfer because she was able to slowly walk up and down the stairs at the beginning and end of the day.

30.     On May 20, 2008, Plaintiff received a revised letter for her no escort duty accommodation, and that is the accommodation she has been using since that date.  To date, there has been no change in her condition.

31.     In September of 2012, Respondent Santiago took over as Principal of C.S. 67.

32.     On April 30, 2015, Plaintiff filed a complaint against Mr. Santiago with the New York City Department of Education Office of Special Investigations ("OSI"), for his failure to act on a death threat made from a student to Plaintiff. This complaint was made over the telephone.

33.     Upon information and belief, in the spring of 2015, Mr. Santiago told Lorraine Brown (the Chapter Leader), that Plaintiff is "too fat and it would take 10 men to lift her if she fell. She has to go."

34.     On May 19, 2015, Mr. Santiago asked to speak to Plaintiff regarding the accommodation letter he found in her file.

35.     He questioned Plaintiff regarding her first accommodation letter that stated she needed to be in a building with an elevator and have a classroom on the first floor. He asked why Plaintiff was not given a medical transfer and she explained that the letter he was going by was the first accommodation letter and that her revised letter only calls for no escort duty.

36.     Mr. Santiago told Plaintiff he was going to send her to medical, despite her explanation that her accommodation still stood as is and her condition had not changed since the accommodation was revised.

37.     On June 4, 2015 Plaintiff received her assignment for the 2015-2016 school year. She was placed in pre-kindergarten. Not only had Plaintiff requested 2nd, 3rd, and 4th grades on her preference sheet, but she is licensed in New York City to teach grades first through sixth, not Pre-Kindergarten.

38.     Upon information and belief, similarly situated teachers who did not have a known disability were given at least one of the preferences on their preference sheet.

39.     Upon information and belief, Mr. Santiago retaliated against Plaintiff for filing her complaint against him, by not giving her one of her grade preferences.

40.     Plaintiff e-mailed Mr. Santiago regarding her placement, and he stated that he did not have to give Plaintiff her preference and he was doing what was best for the school. Finally, Steven Goldberg, the District 12 Representative, explained to Mr. Santiago that he was contractually obligated to give teachers one of their preferences.

41.     On June 12, 2015, Plaintiff received a letter, dated May 19, 2015, stating the reasons she needed to go for a medical examination:

a. Under the previous administration, Plaintiff had received a notice that she needed to be in a school with an elevator and first floor classrooms and C.S. 67 does not have an elevator or classrooms on the first floor.

b. Plaintiff has difficulty walking in the hallways and balancing herself with a cane and a rolling backpack.

c. Plaintiff cannot go up and down the stairs and has fallen downstairs. She cannot move quickly in the event of an emergency and does not participate in fire drills.

d. Students must assist Plaintiff in carrying her personal items. She cannot circulate around the room to support or monitor students.

42.  The basis for the medical examination in the May 19, 2015 letter not only lacks merit, but the points listed are arbitrary and capricious and the letter itself constitutes an overall abuse of authority.

43.  First, Plaintiff had always been placed in classrooms that necessitated going up and down stairs, and never experienced a problem.

44.  Second, Plaintiff should not be penalized for using devices that assist her in walking, due to her disabilities.

45.  Third, on September 28, 2007, when Plaintiff had her fitness exam, upon requesting her initial accommodation, she was declared fit and no safety issues were found. Plaintiff's medical condition has remained unchanged since that exam.

46.  Upon information and belief, similarly situated teachers who did not have a known disability were not forced to undergo additional fitness examinations after already being declared fit.

47.    Fourth, the letter's reference to Plaintiff falling down the stairs is a misrepresentation. On April 28, 2014 Plaintiff fell on the walkway to the staircase because the floor was full of water, not because of her disabilities.

48.    Finally, the letter wrongfully asserts that students must carry Plaintiff's personal items. Again, this is a misrepresentation, as students ask to carry Plaintiff's items, because they like assisting their teacher – not because they have to.

49.    Upon information and belief, Defendant Santiago scheduled this examination both as retaliation for Plaintiff's Complaint against him to OSI and to discriminate against Plaintiff due to her CIDP and Obesity.

50.    Upon information and belief, this was just one a series of tactics used by Defendant Santiago to force Plaintiff out of C.S. 67, due to her disabilities and her complaint against Santiago.

51.    On June 15, 2015, Plaintiff was finally assigned to teach 3rd grade.

52.    On June 17, 2015, Mr. Santiago and the Superintendent of Community School District 12, Rafaela Espinal Pacheco, scheduled Plaintiff for a medical examination, despite the fact that Plaintiff responded to the May 19, 2015 letter by showing Mr. Santiago a copy of her May 20, 2008 revised accommodation letter and explaining the above referenced facts in rebuttal to the May 19, 2015 letter.

53.    On June 17, 2015, Plaintiff was again declared fit after her medical examination.

54.    At Plaintiff's exam, Dr. Bennett suggested she file a new accommodation form requesting no escort duty, limiting her walking up and down – only once on arrival and once on dismissal, being able to sit on her stool as needed, and to have a classroom near an accessible bathroom (with no stairs).

55.     On July 14, 2015, Plaintiff received her accommodation letter granting her no escort duty and walking up the stairs once on arrival and down once on dismissal.

56.     In September of 2015 Plaintiff called the medical department and spoke to Glen Darian, to inquire as to why her accommodations of being able to sit on her stool as needed and having a classroom near an accessible bathroom with no stairs were not granted.

57.     Mr. Darian informed Plaintiff that all her requests for accommodations were approved and forwarded to the disabilities department. However, Plaintiff was only given the no escort duty and limit in walking up and down the stairs at the start of the school year.

58.     As a result of Defendants disability discrimination, Plaintiff would have to walk around to the other side of the school or go upstairs to reach an accessible bathroom, even though her accommodation requests were granted.

59.     As a result of Defendants disability discrimination against Plaintiff, as well as Defendants' failure to grant Plaintiff's accommodation requests until the summer of 2015, Plaintiff received ineffective ratings for sitting on her stool during class throughout the 2013-2014 and 2014-2015 school years by Mr. Santiago, Ms. Ferguson, Ms. Noriega and Peer Validator Marina Vladimova.

60.     Even though Plaintiff's accommodation requests were subsequently granted in the summer of 2015, her ineffective ratings for the aforementioned years remained, which criticized Plaintiff for not circulating the room enough to monitor their progress, but rather, calling on students on at a time to monitor their progress.

61.     Further, when Plaintiff received these ineffective ratings, Defendants were aware of her disability and previous accommodations. Despite their knowledge, Defendants continuously penalized Plaintiff for her disabilities.

PLAINTIFF'S TERMINATION

62.     In 2003 Plaintiff became tenured. Once a New York City teacher becomes tenured they can only be removed from their position "for just cause" if he or she is brought up on charges.

63.     If a teacher receives an ineffective rating from the administration for two (2) consecutive years, then the DOE has "just cause" to bring a charge of incompetence against the teacher and that teacher must go through a 3020 hearing.

64.     However, prior to reaching this point, when a teacher is rated ineffective, he or she is supposed to be put on a Teacher Improvement Plan ("TIP"). The TIP is to be developed and substantially implemented by the school.

65.     Plaintiff's TIP had stated that Mr. Litt, the school's math coach and testing coordinator, was supposed to co-teach with Plaintiff three (3) to five (5) times per week during the 2014-2015 school year. However, Mr. Litt only worked with Plaintiff until November of 2014, and did not substantially implement the TIP, a fact that was later proven at Plaintiff's 3020 hearing.

66.     Upon information and belief, Defendants discriminated against Plaintiff, based on her disabilities, by not providing her with a fully implemented TIP.

67.     Upon information and belief, other similarly situated teachers who were not disabled, were provided with fully implemented TIP's.

68.     On September 8, 2015, Plaintiff received 3020-a charges and a letter stating that she had to report to Middle School 302 for administrative reassignment.

69.     Middle School 302 is in District 8, and C.S. 67 is in District 12. Thus, Plaintiff's reassignment violated the Chancellor's Regulation C770, which states that if you are reassigned you must be assigned to your District Office, your school, or an administrative assignment within your district.

70.     Two other teachers at C.S. 67, Laura Berheim ("Ms. Berheim") and Debra Rodriquez-Baldomero ("Mrs. Baldomero"), were given 3020 charges prior to Plaintiff. Ms. Berheim was placed in District 12 as an Absent Teacher Reserve and her issues were resolved in the summer of 2014. Mrs. Baldomero was allowed to remain at C.S. 67 while she awaited her hearing in January of 2015 and was even allowed to stay with her class. Ms. Berheim and Mrs. Baldomero did not have any known disabilities.

71.     On April 19 and April 20 of 2016, four teachers at C.S. 67 were served with 3020 charges and reassigned to administrative duties within C.S. 67. Plaintiff was the only teacher assigned outside of her district.

72.     The other four teachers were also allowed to have interactions with students, proctor mass preparation periods and assess students. Plaintiff was told by Liza Ortiz, the Middle School principal at 302 that she was not to have any interaction with students and was assigned to read a book in an office in the back of the school's gym.

73.     Upon information and belief, the other teachers reassigned within the district did not have a known disability.

74.     Upon information and belief, this was another discriminatory act taken against Plaintiff due to her disabilities.

75.     On January 19, 2016, Plaintiff's 3020 hearing began. The hearing concluded on March 2, 2016.

76.     In early March of 2016, Plaintiff filed a charge of discrimination with the EEOC, based on Defendants unlawful discrimination against Plaintiff, due to her disabilities.

77.     Plaintiff was terminated on March 24, 2016, shortly after filing her EEOC Complaint.

78.     Further, on May 13, 2016, after Plaintiff was told she could appeal her second ineffective rating, separate from the 3020 hearing, Plaintiff received a phone call from Ms. Sepulveda stating that the Office of Appeals and Review will not be scheduling an appeal for Petitioner's 2015 ineffective rating.

79.     The reasons given for Plaintiff's ineffective ratings were both arbitrary and capricious, as well as an abuse of discretion on the part of the school administration.

80.     For example, on September 30, 2013, Ms. Ferguson rated Plaintiff ineffective because two (2) of Plaintiff's thirty-five (35) students were "off-task" and because the teaching of pronouns was not in Plaintiff's lesson plan.

81.     During that same evaluation, Ms. Ferguson rated Plaintiff ineffective, stating that Plaintiff had difficulty moving around the classroom. However, Plaintiff's difficulty in moving around the room was a result of the school's failure to move boxes of science equipment that were in the way – a fact Ms. Ferguson even confirmed in her testimony during Plaintiff's 3020 hearing.

82.     On January 27, 2013, Ms. Ferguson rated Plaintiff ineffective for having no additional resources. However, Plaintiff not only used additional resources on that day, but has receipts sowing proof of purchase of materials prior to the date of the lesson and corresponding evaluation.

83.     Another example of an arbitrary and capricious ineffective rating occurred during Ms. Ferguson's observation of Plaintiff on January 27, 2014, in which she stated Plaintiff had no lesson plan, when Plaintiff had in fact given Ms. Ferguson a lesson plan containing multiple documents.

84.     On February 25, 2014, Mr. Santiago rated Plaintiff ineffective for integrating art projects into the lessons, after sending an e-mail stating that he wanted to see more arts in the classrooms.

85.     On May 7, 2014, Ms. Ferguson rated Plaintiff ineffective for having her head down as she read from a book. During Plaintiff's 3020 hearing, Ms. Ferguson modeled how Plaintiff should hold a book with both hands as she walks around the classroom – something Plaintiff could clearly not accomplish with her disabilities.

86.     On October 2, 2014, Ms. Noriega rated Plaintiff ineffective for having nothing posted on the board, even though Plaintiff had provided additional posters of the math problems.

87.     Also on October 2, 2014, during the same lesson, Ms. Noriega rated Plaintiff ineffective for not having a follow up activity for students after they finished their work. However, her observation was at 10:00am, which is the exact time that lunch period begins. The students were lining up for lunch and clearly did not have time to do another activity.

88.     On November 3, 2014, Plaintiff was again rated ineffective in a peer evaluation because her lesson plan did not correspond with what was on the board, despite the fact that she was not using the bored and had it set up for the next class. Plaintiff was also rated developing, as opposed to effective, for not sharping a student's pencil.

89.     It should also be noted that at Plaintiff's 3020 hearing, the Peer Validator, Marina Vladimova, testified that her supervisor instructed her to delete all pictures and notes of her observations of Plaintiff. Pictures and notes that would have proven Plaintiff in fact was doing many of the things she was accused of not doing.

90.     On November 24, 2014, Mr. Santiago rated Plaintiff ineffective for not having exit slips for the students, even though exit slips are given at the end of class and his observation occurred in the middle of class.

91.     It should be noted that on December 10, 2014, Ms. Espinal, the Superintendent of District 12 did a walk through at C.S. 67 and observed Plaintiff's class. Ms. Espinal was quoted as stating "that's what I am talking about" and "I wanted to drop to my knees" with regards to Plaintiff's lesson. This was confirmed by Ms. Noriega who high fived Plaintiff and then again a week later when the third grade met with Mr. Santiago for a debriefing of Ms. Espinal's walk through. At that meeting Plaintiff was given a round of applause by Reness Purdue, Gregg Kwarta, Wendy Gonzalez, Patricia Corrado, Erin Bruno, and Colleen Miska.

92.     Prior to Plaintiff's formal evaluation on February 2, 2015, Ms. Noriega sat down with Plaintiff and reviewed and approved her lesson plan. On the day of observation, Plaintiff was rated ineffective on the basis of her lesson objective not correlating with her lesson. This decision was eventually overturned by Arbitrator Brown.

93.     It should also be noted that in March of 2015, Plaintiff was accused of verbally abusing a student. Mr. Santiago wrote up an intake form stating that the mother wanted Plaintiff charged with psychologically abusing children. This complaint was also submitted to OSI. However, the student was moved from Plaintiff's class 303 to Plaintiff's class 301. Mr. Santiago later stated and Plaintiff's 3020 hearing that the mother wanted the child moved because of other children in the class bothering him, and not because of Plaintiff.

94.     However, when parents made complaints about other teachers, those complaints were not submitted to OSI and nothing was ever done. It is submitted that this was yet another

discriminatory act taken by Defendants against Plaintiff based on her disability, as well as a retaliatory act taken by Mr. Santiago against Plaintiff for her complaints against him.

95.     On May 7, 2015, Ms. Noriega rated Plaintiff ineffective for not having a rubric. However, Plaintiff used a rubric on that day and gave same to Ms. Noriega.

96.     Other examples of arbitrary and capricious reasons for Plaintiff's ineffective ratings include, but are not limited to, Plaintiff saying "yesterday" instead of "Tuesday," the fact that some of Plaintiff's students were playing with their pencils, and the fact that none of the students understood what was going on during certain lessons, despite the fact that multiple students answered questions correctly.

97.     Upon information and belief, other similarly situated teachers who did not have a known disability were not given arbitrary and capricious ineffective ratings.

98.     Despite these ineffective ratings, Plaintiff's students had some of the best test scores in the school, a fact that Defendants repeatedly attempted to hide at Plaintiff's hearing.

99.     In fact, Plaintiff's math students doubled or tripled their scores between fall and spring testing.

100.    Upon information and belief, Mr. Santiago instructed Ms. Ferguson and Ms. Noriega to rate Plaintiff ineffective after observation.

101.    Plaintiff had never received an unsatisfactory rating until November 30, 2012, right after Mr. Santiago took over as Principal.

102.    Further, Respondents did not permit Plaintiff to see her students test scores in relation to other classes and grades – yet another example of an abuse of discretion.

103.    Plaintiff's case was not fully and fairly reviewed at her hearing, as Arbitrator Brown failed to even look at evidence that contradicted the reasoning behind Plaintiff's ineffective ratings.

104.    For example, as evidenced at Plaintiff's hearing, through the testimony of witnesses and Plaintiff herself, Plaintiff actively participates in organizations designed to contribute to the teaching profession and participates actively in assisting other educators. The aforementioned actions are necessary to receive an effective rating.

105.    Despite the facts detailed above, the arbitrator failed to review this portion of the rubric and the components that Plaintiff was contesting during her 3020 hearing. Components that were substantiated by evidence and witness testimony and constituted the difference between an effective and ineffective rating.

106.    Also, throughout the hearing Plaintiff was accused of not providing rubrics for her students. However, Plaintiff consistently provided rubrics and checklists throughout the hearing to demonstrate that she did in fact provide rubrics for her students – another piece of evidence ignored by the arbitrator.

107.    Mr. Litt, another teacher at C.S. 67, testified that when Plaintiff was teaching and he came up with a different strategy, they would feed off each other – a direct contradiction of Ms. Noriega's observations stating Plaintiff was resistant to change.

108.    Mr. Litt further testified that Plaintiff's students had differentiated materials and supplemental materials that were common core aligned, and worked in groups – again, a direct contradiction of the lack of materials Plaintiff provided her students.

109.    The aforementioned facts are merely a brief summary, with a few supporting examples, and should by means be considered an exhaustive list.

110.    Upon information and belief, Plaintiff was discriminated against, on the basis of her disabilities, by receiving these false, incorrect, and inaccurate evaluations and observations by Defendants.

111.    Upon information and belief, Plaintiff was given these false, incorrect, and inaccurate evaluations and observations, by Defendants, in retaliation for lodging a complaint against Defendant Santiago with OSI.

112.    Upon information and belief, Defendants gave Plaintiff these false, incorrect, and inaccurate evaluations and observations as a pre-text for Defendants' discrimination against Plaintiff based on her disabilities.

113.    Plaintiff was consistently treated differently from and less favorably than other similarly situated teachers who did not have a known disability.

114.    Plaintiff was discriminated against, by Defendants, for her disabilities and her need for reasonable accommodations.

115.    Plaintiff experienced an ongoing campaign of retaliation after lodging a Complaint against Defendant Santiago with OSI and later complaint with the EEOC based on disability discrimination.

116.    Finally, Plaintiff was terminated in retaliation for her EEOC Complaint against Defendants, which alleged ongoing discrimination on the basis of her disabilities.

### FIRST CAUSE OF ACTION
**Discrimination Based Upon Disability in Violation of the
Americans with Disabilities Act ("ADA")
(As Against New York City Department of Education)
(Chronic Inflammatory Demyelinating Polyneuropathy)**

117.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegations contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

118.    Defendant discriminated against Plaintiff on the basis of her disability, Chronic Inflammatory Demyelinating Polyneuropathy, in violation of the ADA, by treating her differently

from and less favorably than non-disabled employees, and by subjecting her to disparate working conditions and other disparate terms and conditions.

119.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

120.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of compensatory and monetary damages and other relief.

121.    Defendant's discriminatory actions, in violation of the ADA, were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive or exemplary damages.

122.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and other relief this Court may find just and proper.

## SECOND CAUSE OF ACTION
### Discrimination Based Upon Disability in Violation of
### New York State Human Rights Law
### (As Against All Defendants)
### (Pendent Jurisdiction)
### (Chronic Inflammatory Demyelinating Polyneuropathy)

123.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

124.    Defendants discriminated against Plaintiff on the basis of her disability, Chronic Inflammatory Demyelinating Polyneuropathy, in violation of the New York State Human Rights Law, by treating her differently from and less favorably than similarly situated employees who were not disabled, and subjecting her to disparate working conditions and other disparate terms and conditions.

125.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

126.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

127.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## THIRD CAUSE OF ACTION
### Discrimination Based Upon Disability in Violation of
### New York City Human Rights Law
### (As Against All Defendants)
### (Pendant Jurisdiction)
### (Chronic Inflammatory Demyelinating Polyneuropathy)

128.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

129.    Defendants discriminated against Plaintiff on the basis of her disability, Chronic Inflammatory Demyelinating Polyneuropathy, in violation of the New York City Human Rights Law (pursuant to Sec. 8-101, et seq. of the Administrative Code) by treating her differently from and less favorably than similarly situated employees who were not disabled and by subjecting her to disparate working conditions and other disparate terms and conditions.

130.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

131.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

132.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## FOURTH CAUSE OF ACTION
### Discrimination Based Upon Disability in Violation of the Americans with Disabilities Act ("ADA")
### (As Against New York City Department of Education)
### (Obesity)

133.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

134.    Defendant discriminated against Plaintiff on the basis of her disability, Obesity, in violation of the ADA, by treating her differently from and less favorably than non-disabled employees, and by subjecting her to disparate working conditions and other disparate terms and conditions.

135.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

136.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of compensatory and monetary damages and other relief.

137.    Defendant's discriminatory actions in violation of the ADA were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive or exemplary damages.

138.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's' fees, and any other relief this Court may find just and proper.

### FIFTH CAUSE OF ACTION
**Discrimination Based Upon Disability in Violation of**
**New York State Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**
**(Obesity)**

139.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

140.    Defendants discriminated against Plaintiff on the basis of her disability, Obesity, in violation of the New York State Human Rights Law by treating her differently from and less favorably than similarly situated employees who were not disabled, and subjecting her to disparate working conditions and other disparate terms and conditions.

141.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

142.   As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

143.   That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLALRS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

**SIXTH CAUSE OF ACTION**
**Discrimination Based Upon Disability in Violation of**
**New York City Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**
**(Obesity)**

144.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

145.   Defendants discriminated against Plaintiff on the basis of her disability, Obesity, in violation of the New York City Human Rights Law (pursuant to Sec. 8-101, et seq. of the Administrative Code) by treating her differently from and less favorably than similarly situated employees who were not disabled and by subjecting her to disparate working conditions and other disparate terms and conditions.

146.   As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

147.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

148.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of the
### Americans with Disabilities Act ("ADA")
### (As Against New York City Department of Education)

149.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

150.    In violation of the ADA, Defendant retaliated against Plaintiff for filing an EEOC Complaint against Defendant for unlawful discrimination, by terminating her employment, in violation of Federal, State and City law.

151.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Federal laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

152.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Federal laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

153.    Defendants are liable to Plaintiff for this unlawful retaliation.

154.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLARS ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

### EIGHTH CAUSE OF ACTION
**Retaliation in Violation of**
**New York State Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

155.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

156.    In violation of New York State Executive Law § 296 et seq., Defendants retaliated against Plaintiff for filing an EEOC Complaint against Defendants for unlawful discrimination, by terminating her employment, in violation of Federal, State and City law.

157.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New York State laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

158.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New York State laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

159.    Defendants are liable to Plaintiff for this unlawful retaliation.

160.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLARS ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

### NINTH CAUSE OF ACTION
**Retaliation in Violation of**
**New York City Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

161.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

162.    In violation of New York City Administrative Code § 8-107, et seq., Defendants retaliated against Plaintiff for filing an EEOC Complaint against Defendants for unlawful discrimination, by terminating her employment, in violation of Federal, State and City law.

163.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of City laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

164.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of City laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

165.    Defendants are liable to Plaintiff for this unlawful retaliation.

166.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLARS ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff hereby demands a trial by jury on issues of fact and damages stated in this Complaint, and on any amended complaint filed in this action and as allowed under the Constitution and laws of the United States.

Dated: New York, New York
         December 12, 2016

Yours, etc.

BALLON STOLL BADER & NADLER, P.C.

By:    _____
       Marshall B. Bellovin, Esq. (MB 5508)
       Lily A. Ockert, Esq. (LO 5687)
       729 Seventh Avenue, 17th Floor
       New York, New York 10019
       212-575-7900