UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANET WASHINGTON,

                                Plaintiff,

            – against –

NYC DEPARTMENT OF EDUCATION,
JEFFREY SANTIAGO, as principal of C.S. 67,
DONNA FERGUSON, as assistant principal of
C.S. 67, and CARMEN NORIEGA, as assistant
principal of C.S. 67,

                                Defendants.

**OPINION AND ORDER**

16 Civ. 9588 (ER)

Ramos, D.J.:

        Plaintiff Janet Washington ("Washington"), a teacher, brings this action for

discrimination based on disability and retaliation under the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12111 *et seq*., the New York State Human Rights Law ("NYHRL"),

New York Executive Law §§ 290 *et seq*., and the New York City Human Rights Law ("NYC

Administrative Code"), Administrative Code of the City of New York, §§ 8-101, *et seq*.

Defendants Board of Education of the City School District of the City of New York ("DOE")

(also known as and sued herein as the "New York City Department of Education"), Jeffrey

Santiago ("Santiago"), Donna Ferguson ("Ferguson"), and Carmen Noriega ("Noriega")

(together, "Defendants"), move to dismiss the Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  For the reasons stated below, the Court GRANTS Defendants'

motion.

## I. BACKGROUND[1]

### A. Employment and Disabilities

Washington, a first through fourth grade teacher, was hired by Community School District 67 ("C.S. 67") in September 2000 and became a tenured teacher there in 2003. Compl. ¶¶ 2, 15, 62. She worked as teacher until her termination on March 24, 2016. *Id.* ¶¶ 2, 77.

In 2006, Washington became sick and was subsequently diagnosed with Chronic Inflammatory Demyelinating Polyneuropathy ("CIPD"). CIPD causes her legs to weaken, resulting in difficulty with walking and coordination. *Id.* ¶¶ 17–18. Washington also suffers from obesity, and her obesity impairs some of her physical body functioning. *Id.* ¶ 19. Additionally, on September 15, 2006, she fell at work, which further contributed to her difficulties walking. *Id.* ¶ 20.

Washington's physical therapist advised her to limit the number of times she walked up and down the stairs, and she provided a doctor's note to the school principal at the time, Emily Grimball, stating her limitations. *Id.* ¶¶ 21–22. On September 28, 2007, Washington underwent a fitness examination with the BOE that declared her fit to work and found no safety issues. *Id.* ¶ 45. On November 6, 2007, the medical office granted Washington's request for a "no escort duty" accommodation, which limited her to walking up and down the stairs once at the beginning of the school day and once at the end of the school day. *Id.* ¶¶ 24–25. She was also granted an accommodation of a first floor classroom or to a building with an elevator. *Id.* ¶ 26.

In February 2008, Washington broke her foot, and was on leave until June 2008. *Id.* ¶ 27. When she returned to work, she told the medical office that she desired only a no escort

[1] The following facts, accepted as true for purposes of the instant motion, are based on Plaintiff's allegations in her Complaint (Doc. 1) ("Compl."). *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

duty accommodation, and that she did not need or want accommodations for a first floor classroom or elevator building. *Id.* ¶ 28. Specifically, she did not want a medical transfer to a school with an elevator or first floor classroom because she was able to slowly walk up and down the stairs at the beginning and end of the day. *Id.* ¶ 29.[2] On May 20, 2008, Washington received a revised letter limiting her accommodation to no escort duty, and there has been no change in her medical condition since. *Id.* ¶ 30.

In September 2012, Santiago became the Principal of C.S. 67. *Id.* ¶ 31. On April 30, 2015, Washington filed a complaint against Santiago with the New York City Department of Education Office of Special Investigations ("OSI") for his failure to act on a death threat made by a student against her. *Id.* ¶ 32.[3] On May 19, 2015, Santiago met with Washington to question her regarding her first accommodation letter of November 6, 2007, which stated that she needed to be in a building with an elevator or have a classroom on the first floor. *Id.* ¶¶ 34–35. Washington explained that her accommodation letter was revised on May 20, 2008, and that her only accommodation at that time was no escort duty. *Id.* Santiago then told Washington that he was going to send her to the medical department. *Id.* ¶ 36. In response, Washington explained to Santiago that her accommodation remained valid and that her medical condition had not changed since she received the revised accommodation. *Id.* Also in the spring of 2015, Santiago told a union leader that Washington was "too fat and it would take 10 men to lift her if she fell. She has to go." *Id.* ¶ 33.

---

[2] Washington requested the modification of her accommodations because she feared she would "be sent to another school that was far away." *See* Declaration of Leora R. Grushka ("Grushka Decl.") (Doc. 23), ¶ 3 Ex. A ("§ 3020-a Opinion") at 25.

[3] Washington made this complaint over the phone. *Id.*

On June 4, 2015, Washington, who had previously been a first through fourth grade teacher, was assigned to teach pre-kindergarten for the 2015–2016 school year. *Id.* ¶ 37. She was assigned that position despite her request to remain in her current assignment, and despite the fact that she was licensed in New York City to teach only first through sixth grades. *Id.* Washington emailed Santiago regarding her placement, and he replied that he did not have to assign her to teach any of the grade levels she listed as her preferences. *Id.* ¶ 40. At some point thereafter, Steven Goldberg, a union representative, told Santiago that he was contractually obligated to give teachers one of their listed preferences. *Id.*

On June 12, 2015, Washington received a letter, dated May 19, 2015, stating that a further medical examination was required because: (1) she received notice under the previous administration that she needed to be in a first floor classroom or a school with an elevator; (2) she has difficulty walking and balancing with a cane and a rolling backpack; (3) she cannot walk up and down the stairs and previously fell down the stairs; (4) students had to assist her in carrying her personal items; and (5) she cannot move about the room to monitor the students. *Id.* ¶ 41. Washington claims that the basis of the medical examination in the May 19, 2015 letter lacks merit for several reasons, including that her medical condition remained unchanged since her September 28, 2007 medical examination, when she was declared fit for work. *Id.* ¶ 42. Washington alleges that this exam was both discriminatory based on her disabilities and an act of retaliation for her complaint against Santiago to OSI.

On June 17, 2015, Santiago and the Superintendent of Community School District 12 ("District 12"), Rafaela Espinal Pacheco, scheduled Washington for a medical examination, and she was again declared fit for work. *Id.* ¶¶ 52–53. At Washington's exam, the doctor suggested that she file a new accommodation request to be allowed to sit on a stool as needed and to have a

classroom near an accessible bathroom, in addition to no escort duty. *Id.* ¶ 54. However, in the follow-up accommodation letter that she was provided dated July 14, 2015, she was granted only the no escort duty and stair accommodations. *Id.* ¶ 55. Thus, Washington would have to walk around to the other side of the school or go upstairs to reach an accessible bathroom. *Id.* ¶ 58.

### B. Ratings and § 3020-a Hearing

In the 2013–2014 school year, New York City teachers began receiving ratings based in part on multiple measures of effectiveness known as "Measures of Teacher Performance" ("MOTP"), as well as Measures of Student Learning ("MOSL"). *See* § 3020-a Opinion at 6. Under this framework, multiple factors are considered that result in overall ratings of "Highly Effective," "Effective," "Developing," or "Ineffective" ("HEDI"). *Id.*

Prior to the 2012–2013 school year, Washington never received ineffective or unsatisfactory ratings. Compl. ¶ 16.[4] In that year, Washington was the subject of two evaluations, both of which rated her as "unsatisfactory." § 3020-a Opinion at 6. In the 2013–2014 and 2014–2015 school years, Washington received a rating of ineffective by Santiago, Ferguson, Noriega, and a "Peer Validator"—Marina Vladimova. Compl. ¶ 59. Defendants were aware of Washington's disability when she received her ineffective ratings, and Defendants often criticized her during her evaluations for calling on students to monitor their progress, rather than walking about the classroom on foot to monitor them. *Id.* ¶¶ 60–61. For example, on September 30, 2013, Ferguson rated Washington as ineffective because two of Washington's thirty-five students were "off-task," and Washington had difficulty in moving around the classroom to monitor them. *Id.* ¶¶ 80–81.

---

[4] The parties do not explain how the rating system worked prior to the 2013 school year and whether these ratings were comparable.

Washington also alleges that several other stated reasons for her ineffective ratings were unfounded and motivated by discriminatory animus. *See id.* ¶ 79. Washington alleges that, upon information and belief, Santiago instructed Ferguson and Noriega to rate her as ineffective and that other similarly situated teachers who did not have a known disability and did not file complaints with OSI were not given the same low ratings. *Id.* ¶¶ 97, 100. Washington also provides examples of her students' high test scores and a positive review from late 2014 from the superintendent of District 12 as support for her position that her low ratings were groundless. *Id.* ¶¶ 91, 98–99.

§ 3020-a Hearing

Once a New York City teacher becomes tenured, she can only be removed from her position "for just cause" after being charged with incompetence. *Id.* ¶¶ 62–63. Specifically, if a teacher receives an ineffective rating from the administration for two consecutive years, then the DOE has just cause to bring a charge of incompetence against the teacher at what is called a § 3020-a hearing. *Id.* Washington alleges that prior to reaching the § 3020-a hearing, a teacher who is rated ineffective is supposed to be put on a substantially implemented Teacher Improvement Plan ("TIP"). *Id.* ¶ 64. Her TIP provided that Mr. Litt ("Litt"), the school's math coach and testing coordinator, was supposed to co-teach with her three to five times per week during the 2014–2015 school year. *Id.* ¶ 65. However, Washington alleges that Litt only worked with her until November of 2014 and therefore her TIP was never substantially implemented. *Id.* ¶ 65. She further alleges, upon information and belief, that other similarly situated teachers who were not disabled and did not file complaints with OSI had fully implemented TIPs. *Id.* ¶¶ 66–67.

On September 8, 2015, Washington received § 3020-a charges and a letter stating that she had to report to Middle School 302 in District 8, a different school district, for administrative reassignment. *Id.* ¶¶ 68–69. She alleges that this reassignment was in violation of Chancellor's Regulation C-770 because reassigned employees must be transferred to a school or administrative assignment within their own district. *Id.* On April 19 and April 20, 2016, four other teachers at C.S. 67 were given § 3020-a charges and reassigned to administrative duties within the school itself. *Id.* ¶ 71. Washington was the only teacher assigned outside of the district. *Id.* The other four teachers were also allowed to have interactions with students, while Washington was told by Liza Ortiz, the principal at Middle School 302, that she was not allowed to interact with students. *Id.* ¶ 72. Instead of teaching, she was assigned sit in an office in the back of the school's gym, where she read books. *Id.* Washington alleges that she was discriminated against by being reassigned outside of the district due to her disabilities. *Id.* ¶¶ 73–74.

Washington's § 3020-a hearing began on January 19, 2016, and concluded on March 2, 2016. *Id.* ¶ 75. It took place over ten days (including the pre-hearing conference), and involved twelve witnesses, including six called by Washington. § 3020-a Opinion at 5. Washington also testified. *Id.* Washington was represented by counsel during the proceedings. *See id.* at 1.

Washington was charged with the following: (1) ineffective pedagogical practice during the 2013–2014 and 2014–2015 school years (specifications 1 to 4); (2) failure to plan and execute lessons on two discrete dates during the 2012–2013 school year (specification 5); (3) verbal abuse of students on three separate occasions (specifications 6, 7, and 8); and (4) failure to remediate pedagogy over the course of three school years (specification 9). *Id.* at 2, 22. On March 21, 2016, Hearing Officer James A. Brown ("Brown") issued an Opinion. *See generally*

*id.* Brown determined that Washington was guilty of all the specifications, with the exception of specification 5(b), which concerned the adequacy of the planning and execution of her lesson on February 22, 2013. *Id.* at 28–30. Brown also found that despite Washington's assertions to the contrary, the TIP was sufficient and substantially developed. *Id.* at 23–24.

In upholding all but one of the specifications regarding Washington's poor performance, Brown directly addressed Washington's allegations of discrimination:

> Respondent's main argument is that she was negatively evaluated because of her disability . . . . I find that Respondent's arguments are insufficient to rebut the presumption of her incompetence.
>
> There is no dispute that Respondent suffers from a medical condition; indeed the Department acknowledged said condition when it offered her the following accommodations in its April 18, 2008 letter: "No escort duty, First floor classroom, or Elevator building." . . . In a subsequent May 20, 2008 letter, Respondent's accommodations were modified, at her request, to include "no escort duty" only. . . . Respondent requested the modification fearing that she would 'be sent to another school that was far away' because C.S. 67 has no elevator and her students are not assigned to first floor classrooms. . . .
>
> Respondent seizes upon Principal Santiago's repeated reliance on the outdated 2008 accommodation letter as evidence of the administrator's animus toward her. Evidence of animus (typically grounded in discrimination or retaliation), when it contributes to procedural irregularities sufficient in number to negatively impact a teacher's evaluations, can rebut a presumption of incompetence. . . .
>
> Herein, Respondent's evidence of actual animus is weak. Even if Principal Santiago's reliance on the outdated April 18, 2008 accommodation letter, and his misstatements regarding Respondent's medical condition, constitute animus, such animus cannot account for three years of Ineffective or Unsatisfactory evaluations which predate Principal Santiago's May 19, 2015 letter. I also note that most of the negative evaluations, dating back to 2012, were conducted by administrators other than Principal Santiago. . . . Accordingly . . . I conclude that just cause exists for the termination of Respondent's employment, and I so award.

*Id.* at 25–28.

### C. EEOC Charge and Termination

In early March of 2016, prior to the issuance of Brown's opinion, Washington filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming that Defendants unlawfully discriminated against her due to her disabilities. Compl. ¶¶ 76–77. That same month, on March 24, 2016, three days after issuance of the § 3020-a Opinion, Washington was terminated. *Id.* On September 14, 2016, the EEOC mailed a letter to Washington indicating that it had closed its file on her claim, finding that it was "unable to conclude that the information obtained establishes violations of the statutes." *See* Compl. Ex. 1. Washington had 90 days from the date of receipt of the notice to file a claim in state or federal court. *Id.*

## II. PROCEDURAL BACKGROUND

On June 21, 2016, Washington filed a Notice of Claim against the Defendants in the instant matter, in addition to four other respondents, including Brown. *See* Grushka Decl., Ex. B. Among the claims listed, she put Defendants on notice of her claims of "disability discrimination, retaliation, [and] deprivation of rights, resulting from ineffective evaluation ratings and subsequent termination" under the ADA, NYHRL and the NYC Administrative Code. *Id.*

On June 28, 2016, Washington filed a C.P.L.R. Article 78 Petition in the Supreme Court, Bronx County, against the Defendants in the instant matter, in addition to four other respondents. *See* Grushka Decl., Ex. C. The Article 78 petition sought a writ of mandamus to compel the respondents to reverse Brown's §3020-a Opinion and to reinstate Washington to her position at C.S. 67. *Id.* Respondents moved to dismiss the Article 78 Petition. *See* Grushka Decl, Ex. D.

Washington filed the instant lawsuit litigation on December 12, 2016.  On December 15, 2016, Washington elected to discontinue the Article 78 proceeding with prejudice, and on December 19, 2016, Justice Alison Y. Tuitt denied the Article 78 Petition as moot.  *See id.*

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

## IV.    DISCUSSION

Defendants move to dismiss the Complaint on the following grounds:  (1) Washington's claims are barred by the doctrine of collateral estoppel, based on her previous § 3020-a hearing; (2) Washington's claims are barred by the doctrine of *res judicata*, due to her previous Article 78 proceeding; (3) Washington failed to state a cause of action under the ADA against the

individually-named defendants; and (4) Washington failed to plausibly plead her retaliation claims. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") (Doc. 24) at 2.

## A. Preclusive Effect of the § 3020-a Hearing

Defendants argue that Washington is collaterally estopped from bringing the entire action because she had an opportunity to fully and fairly litigate all the issues that are now before the Court during her § 3020–a hearing. "Under New York law, collateral estoppel precludes a plaintiff from contesting in a subsequent action issues clearly raised in a prior proceeding and decided against that party, irrespective of whether the tribunals or causes of action are the same . . . ." *El–Shabazz v. State of New York Comm. on Character & Fitness*, 428 F. App'x 95, 96–97 (2d Cir. 2011). The doctrine of collateral estoppel does not by itself bar any claims—it bars only the relitigation of "issues." *See Batyreva v. N.Y.C. Dep't of Educ.*, No. 07 Civ. 4544 (PAC), 2010 WL 3860401, at *9 (S.D.N.Y. Oct. 1, 2010), *aff'd*, 464 F. App'x 31 (2d Cir. 2012) (citing *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)).

The Second Circuit has held that a "Section 3020–a hearing is a quasi-judicial administrative action whose findings are entitled to preclusive effect" so long as the standard requirements of collateral estoppel are met. *Burkybile v. Bd. of Educ. of Hastings–on–Hudson Union Free Sch. Dist.*, 411 F.3d 306, 308 (2d Cir. 2005). In the case of unreviewed findings of state administrative tribunals, the Supreme Court has held that "when a state agency 'acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (internal alterations and citations omitted); *see also Burkybile*, 411 F.3d at 310–12. The doctrine of collateral estoppel precludes the relitigation of an issue

when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999) (quoting *In re PCH Assocs.*, 949 F.2d 585, 593 (2d Cir. 1991)). "In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 501 (1984).

Washington argues that she did not have an opportunity to fully and fairly contest the matter in the prior action. In support, Washington states that Brown failed to consider evidence that contradicted the reasoning behind her ineffective ratings. Plaintiff's Memorandum of Law in Opposition ("Pl.'s Mem.") (Doc. 26) at 10. Specifically, Washington argues that Brown failed to review: pictures of her classroom that showed that rubrics and charts were posted throughout the room, contrary to Defendants' statements in the ineffective ratings; her students' progress reports and grades, which would have proven that her students had some of the best test scores in the school; a classroom seating chart that showed that her students sat in groups, in contradiction to Ferguson's testimony; and receipts showing that Washington provided her students with additional class resources on the day that Ferguson gave her an ineffective rating for failing to have additional resources. *Id.* at 10–11. In summary, Washington argues that Brown's failure to consider evidence that supported Plaintiff's position resulted in a compromised and inappropriate decision. *Id.* at 11–12.

As a preliminary matter, the Court notes that the Education Law "lays out extensive litigation procedures for hearings, including motion practice, bills of particulars, mandatory disclosure, discovery, subpoena power, right to counsel, cross-examination, testimony under oath, and a full record." *Burkybile*, 411 F.3d at 312 (citing N.Y. Educ. L. § 3020-a(3)(c)). Education Law § 3020-a authorizes a hearing officer to adjudicate questions of fact, charges, and penalties. *See* N.Y. Educ. L. § 3020-a(4). Moreover, the Court notes that Washington had the opportunity to appeal the merits of the § 3020-a Opinion and contest the bases by which Brown rendered his decision. Specifically, Section 3020–a(5) states, "[n]ot later than ten days after receipt of the hearing officer's decision, the employee or the employing board may make an application to the New York state supreme court to vacate or modify the decision of the hearing officer . . . ." The avenue for the appeal to the New York state supreme court is under N.Y. C.P.L.R. § 7511 ("Article 75"). *See id.*; *Hunt v. Klein*, 476 F. App'x 889, 892 (2d Cir. 2012). Washington failed to bring a timely Article 75 Petition, and is time-barred from doing so now. [5] Thus, the Court notes that Washington had an adequate venue and statutorily-prescribed remedy to address any claims regarding Brown's evidentiary rulings and the process by which he reached those conclusions. *Id.* at 892 (drawing a distinction between an argument that the "proceedings violated § 3020–a itself" and an argument that the proceedings were constitutionally defective, and affirming the district court dismissal of a challenge to the § 3020–a hearing itself on the ground that the only statutory avenue to appeal the decision itself was via an Article 75 petition).

---

[5] Washington filed an Article 78 Petition, as opposed to an Article 75 Petition, but later elected to discontinue the action with prejudice.

A determination as to whether a prior action or proceeding provided a full and fair opportunity to litigate an issue requires consideration of the "realities of the prior litigation, including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." *Levich v. Liberty Cent. Sch. Dist.*, 361 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (citing *Ryan*, 62 N.Y.2d at 501). The specific factors to be considered include: the nature of the forum and the importance of the claim in the prior proceeding; the size of the claim; the incentive and initiative to litigate and the actual extent of litigation; the competence and expertise of counsel; the availability of new evidence; the differences in the applicable law; and the foreseeability of future litigation. *See id.*; *see also Kosakow v. New Rochelle Radiology Associates,* 274 F.3d 706, 734 (2d Cir. 2001).

Applying these principles to the facts here demonstrates that Washington had a full and fair opportunity to litigate in the § 3020–a hearing, despite Washington's assertions that Brown erred in his evidentiary rulings. Prior to the pre-hearing conference, Washington made a motion to dismiss, and Brown denied the motion in its entirety. § 3020–a Opinion at 5. At the hearing, Washington was represented by counsel,[6] had an opportunity to present evidence and arguments, and the hearing included nine days of testimony and evidence.[7] The hearing included the testimony of twelve witnesses, including six who appeared for Washington: union leader and teacher Loraine Brown, teacher Edith Roach, paraprofessional Rhoda Clayton, former teacher Barbara Lloyd, former assistant principal Leslie Jackson, former Principal Emily Grimball.

---

[6] The Law Office of David Barrett, Esq., represented Washington. *See* § 3020-a Opinion at 1.

[7] The hearing was held on January 19, 20, 25, 26, 28, February 1, 12, 19, and March 2, 2016. § 3020–a Opinion at 5. A pre-hearing conference was also conducted telephonically on January 8, 2016. *Id.* at 4.

Washington also testified on her own behalf.  *Id.* at 5.  A stenographic record of the pre-hearing conference and hearing were taken, and the hearing resulted in a 30-page decision.[8]  *Id.*

Next, Washington argues that the issues litigated in her § 3020-a hearing are not identical to the issues here, and thus collateral estoppel does not apply.  The Court addresses the separate issues of discrimination and retaliation in turn.

The Second Circuit has held that a finding of just cause for termination or discipline resulting from a § 3020–a hearing does not necessarily preclude the possibility that her termination was "motivated by unlawful animus" and that a later jury could later find that the plaintiff "was also terminated at least in part because of [retaliatory or discriminatory reasons]."  *Leon v. New York City Dep't of Educ.*, 612 F. App'x 632, 634 (2d Cir. 2015) (rejecting the district court's finding that the plaintiff's discrimination and retaliation claims were precluded as a result of a § 3020–a hearing and reasoning that "[t]he plaintiff could be successful on the [discrimination or retaliation] claims even if the jury were to accept that there were legitimate reasons for terminating h[er], too") (quoting *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 47 (2d Cir. 2014) (holding an administrative hearing officer's determination did not preclude employee from subsequently asserting violation of his right to intimate association)).

However, here, unlike in *Leon* and *Matusick*, the hearing officer *did* "address[] [and] actually decide[] whether the charges leading to [Washington's] termination were driven, even in part, by discriminatory [] intent."  *Leon*, 612 F. App'x at 634–35 (internal quotations omitted).  Washington argues that she "briefly addressed the issue of discrimination" when discussing her medical letter, but that she did not have to opportunity to fully and fairly litigate her discrimination claim because "the focus of the hearing was reviewing Plaintiff's ineffective class

[8] Neither party submitted the transcript of the proceedings to the Court.

15

evaluations." Pl.'s Mem. at 12. However, Brown expressly noted that Washington's "*main argument* [wa]s that she was negatively evaluated because of her disability . . . ." § 3020-a Opinion at 25 (emphasis added).[9] Brown concluded that "evidence of actual animus is weak . . . [and] cannot account for three years of Ineffective or Unsatisfactory evaluations which predate Principal Santiago's May 19, 2015 [medical] letter." § 3020-a Opinion at 26.

Likewise, here, Washington argues that she was discriminated against due to her disabilities, and Defendants contend that Washington's performance as a teacher was lacking. Thus, the identical issue of whether Washington was discriminated against based on her disability was actually decided at her § 3020-a hearing, and such identity of issues is sufficient to satisfy the first prong of the collateral estoppel inquiry. *See, e.g., Ferraro v. N.Y. City Dep't of Educ.,* No. 13 Civ. 5837 (LDH), 2017 WL 4402436, at *9 (E.D.N.Y. Sept. 30, 2017).[10]

As to her retaliation claims, unlike her discrimination claims, the Court finds that they are not barred by collateral estoppel as a result of the § 3020-a hearing. Although Brown refers to

---

[9] Specifically, Washington argued at the § 3020-a hearing that the DOE acted in bad faith when it sought "to remove her from her teaching position at C.S. 67 because she had a disability." § 3020-a Opinion at 16 (citing § 3020-a transcript). In support, Washington cited Santiago's attempt to refer her "to medical for a fitness of duty exam" based on a letter "filled with lies about her and her condition" and his efforts "to deny her from getting one of her preferences for the 2015–2016 school year." *Id.* Washington further argued that administrators "knew she had a problem with her leg and continuously harassed her in their observations by claiming that she wasn't monitoring her students because she wasn't walking around the room." *Id.* at 16–17. Washington also referenced teacher Loraine Brown's testimony that Santiago commented on her weight and disability at a meeting. *Id.*

[10] Washington does not argue that the issues decided were not "necessary to support a valid and final judgment on the merits." *See Hussein,* 178 F.3d at 129. Nonetheless, the Court finds that the issue of whether Washington was discriminated against was necessary in supporting Brown's decision on the merits. The Opinion states, "Evidence of animus (typically grounded in discrimination or retaliation), when it contributes to procedural irregularities sufficient in number to negatively impact a teacher's evaluations, can rebut a presumption of incompetence. . . . [T]eachers should not be at risk when administrators, who are improperly motivated to terminate their employment, evaluate their performance." § 3020-a Opinion at 26 (internal citations omitted). Thus, Brown's findings concerning Washington's allegations of discrimination were necessary to support his judgment on the merits. *See, e.g., Smith v. N.Y. City Dep't of Educ.,* 808 F. Supp. 2d 569, 581 (S.D.N.Y. 2011) ("[I]t is clear that the findings of the hearing officers regarding the propriety of the adverse employment action were not only necessary to support a valid and final judgment on the merits, but that those finds [sic] were the key conclusions reached at the hearings."); *Batyreva,* 2010 WL 3860401, at *15 (in deciding that the negative evaluations were fair and reasonable, the arbitrator necessarily determined that they were not animated by discriminatory or retaliatory intent.

"retaliation" once in the Opinion in a recitation of the relevant legal framework for overcoming a presumption of incompetence, *see* § 3020-a hearing at 26, Brown never explicitly addressed or ruled on the merits of any retaliation argument.   Moreover, at the time of the of the § 3020-a hearing, which ended on March 2, 2016, Washington had not yet filed her EEOC charge, and this charge forms the basis of Washington's retaliation claims.  *See* Compl. ¶¶ 75–77.  Therefore, because Washington's retaliation claims were not expressly decided at the § 3020-a Hearing, she cannot be estopped from pursuing those claims now.  *See Leon*, 612 F. App'x at 634 ("[T]here is no indication that the § 3020–a hearing addressed, much less actually decided, whether the charges leading to Leon's termination were driven, even in part, by discriminatory or retaliatory intent.") (internal quotations omitted); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 471 (S.D.N.Y. 2011) (collateral estoppel does not bar a plaintiff's retaliation claim where "the record of administrative hearing is devoid of any evidence that the issue of retaliation was actually litigated and necessarily decided") (citing *Morey v. Somers Cent. Sch. Dist.*, No. 06 Civ. 1877 (WCC), 2007 WL 867203, at *5 (S.D.N.Y. Mar. 21, 2007)); *see also Burkybile*, 411 F.3d at 313 ("The record does not reflect that any constitutional claims were raised at the Section 3020–a hearing, so we do not take these as decided.").

Thus, the Court GRANTS Defendants' motion to dismiss the discrimination claims on the basis of collateral estoppel and DENIES the motion with respect to the retaliation claims.[11]

## B.      Preclusive Effect of the Article 78 Proceeding

Defendants further argue that because Washington discontinued her prior Article 78 proceeding by stipulation of discontinuance, her claims in the instant matter—including the retaliation claims— are barred by the doctrine of *res judicata.*  Under the doctrine of *res*

---

[11] Although the Court finds that the retaliation claims are not precluded by issues decided in the § 3020-a hearing, for the reasons discussed *infra*, the Court finds Washington fails to state a claim for retaliation.

*judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). A Defendant asserting *res judicata* must show "that (1) the previous action involved an adjudication on the merits; (2) the previous action involved [the same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (internal quotations omitted).

Here, Washington previously filed a notice of claim, and then brought a C.P.L.R. Article 78 proceeding in Supreme Court of New York, Bronx County, seeking a reversal of her termination and a reinstatement to her position. *See* Grushka Decl., Exs. B–C. Her Article 78 Petition was filed against the Defendants in the instant matter, in addition to four other respondents. *See* Grushka Decl., Ex. C ("Article 78 Petition"). It alleged that Washington had a disability and was discriminated against on the basis of that disability. *See generally id.* On December 15, 2016, Washington's counsel elected to discontinue the Article 78 proceeding with prejudice. On or about December 19, 2016, Justice Alison Y. Tuitt denied the Petition as moot, as per the stipulation of discontinuance. *See* Grushka Decl, Ex. D.

The Court finds her Article 78 proceeding does not bar Washington's claims in the instant action. Under New York law, as interpreted by the Second Circuit, the use of *res judicata* to bar a subsequent suit "is limited to situations where the initial forum had the power to award the full measure of relief sought in the later litigation." *Antonsen v. Ward*, 943 F.2d 198, 200 (2d Cir. 1991). That is, claim preclusion does not apply "where the plaintiff 'was unable to . . . seek a certain remedy or form of relief in the first action because of the limitations on the subject

18

matter jurisdiction of the courts or restrictions on their authority to entertain . . . multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action . . . to seek that remedy or form of relief.'" *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 781 (S.D.N.Y. 2003) (quoting *Parker v. Blauvelt Volunteer Fire Co., Inc.*, 93 N.Y.2d 343, 349 (N.Y. 1999)).[12]

Here, Washington seeks compensatory damages, punitive damages, and attorney's fees, whereas in her Article 78 proceeding she sought only a reversal of her termination and a reinstatement to her position. *Compare* Compl. ¶ 122 *with* Article 78 Petition. Since monetary relief is not available under Article 78, Washington is not precluded from bringing her case in federal court on the basis of the prior stipulation of discontinuance in that matter. *See Latino Officers*, 253 F. Supp. 2d at 781 (holding that because plaintiff class sought relief that include compensatory and punitive damages, and such damages were not available to plaintiff class in Article 78 proceedings, *res judicata* is inapplicable); *Karamoko v. New York City Housing Authority*, 170 F. Supp. 2d 372, 377 (S.D.N.Y. 2001) (holding *res judicata* does not bar claims for damages where a plaintiff has previously brought a related Article 78 proceeding alleging a violation of his constitutional rights and subsequently seeks monetary damages for the violation of those rights); *Arosena v. Coughlin*, No. 92 Civ. 0589E (F) (JTE), 1994 WL 118298, at *2 (W.D.N.Y. Mar. 16, 1994) ("Under New York law compensatory damages cannot be awarded in an Article 78 proceeding"). Thus, Washington's Article 78 proceeding does not have preclusive effect here.

---

[12] Defendants attempt to argue in their reply brief that the circumstances underlying this action differ from those in *Latino Officers Ass'n*, in which the plaintiffs brought federal actions after losing at the Article 78 level. Specifically, Defendants argue that Washington's ultimate loss on the merits due to a stipulation of dismissal means that her claims should be precluded. However, case law makes clear that claim preclusion does not apply where the remedies available in a prior proceeding, such as an Article 78 proceeding, differ from the relief sought in federal court. *See Latino Officers Ass'n*, 253 F. Supp. 2d at 781 n.66 (listing cases).

### C. Individual Liability for ADA Discrimination or Retaliation Claims

The ADA prohibits disability discrimination by a covered entity, such as an employer, employment agency, labor organization, or joint labor-management committee. 42 U.S.C. §§ 12111(2), 12112(a). The ADA does not provide individual liability for either discrimination or retaliation claims. *See Ivanov v. New York City Transit Auth.,* No. 13 Civ. 4280 (PKC), 2014 WL 2600230, at *5 (S.D.N.Y. June 5, 2014) ("[A]n individual is . . . not an 'employer' under the ADA and, therefore, may not be liable for disability discrimination."). Washington concedes to the dismissal of the claims against Santiago, Ferguson, and Noriega, individually, under the ADA. Pl.'s Mem. at 1. Accordingly, the Court GRANTS the motion to dismiss with respect to the ADA claims against the individual defendants.

### D. Failure to State a Claim for Retaliation

Defendants further argue that the Complaint fails to state a *prima facie* claim for retaliation. To establish a *prima facie* case of retaliation under both the ADA and NYHRL, a plaintiff must show that: "(1) the employee was engaged in an activity protected by [the applicable statutes], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Moore v. Verizon*, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *14 (S.D.N.Y. Feb. 5, 2016) (quoting *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)) (internal quotation marks omitted); *see also Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015).[13] "[T]he allegations in the complaint

---

[13] To prevail on a NYCHRL retaliation claim, Washington "must show that she took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013); *see also Mayling Tu v. OppenheimerFunds, Inc.*, No. 10 Civ. 4971 (PKC), 2012 WL 516837, at *11 (S.D.N.Y. Feb. 16, 2012) (noting that the NYCHRL does not require evidence of an adverse employment action, only employer conduct likely to deter a person from opposing discrimination).

need only give plausible support to the reduced *prima facie* requirements . . . ." *Littlejohn*, 795 F.3d at 316. "Moreover, in the absence of a direct link between a complaint and retaliatory action, plaintiffs may demonstrate the necessary causal connection 'indirectly, by showing that the protected activity was followed closely by discriminatory treatment [in the form of an adverse employment action].'" *Moore*, 2016 WL 825001, at *14 (quoting *Littlejohn*, 795 F.3d at 319).

Here, Washington alleges two separate instances of retaliation: (1) that she was retaliated against because she filed a complaint with OSI in April 2015; and (2) that she was retaliated against for filing her EEOC complaint in March 2016. The Court addresses each in turn.

First, Washington alleges that she was retaliated against after she filed a complaint with OSI against Santiago for his failure to act on a death threat from a student. Compl. ¶ 32. Plaintiff alleges that in response to the OSI complaint, Santiago told a third party that Washington was "too fat" and that she "ha[d] to go." *Id.* ¶ 33. Washington alleges that Defendants took improper measures against Washington, including assigning her to teach pre-kindergarten classes for the 2015-2016 school year; mandating an additional medical examination; and denying the accommodation requests suggested by her doctor, including being able to sit on a stool as needed and having a classroom near an accessible bathroom. *Id.* ¶¶ 37, 41, 52–54.

Defendants argue that Washington fails to allege any plausible facts demonstrating that the OSI complaint was related to discrimination on the basis of her disability. Defs.' Mem. at 17–18. The Court agrees. Where a plaintiff files grievances or complains of "conduct other than unlawful discrimination," she does not engage in protected activity subject to a retaliation claim. *See Pezhman v. City of New York*, 851 N.Y.S.2d 14, 16 (N.Y. App. Div. 2008); *see also*

*Marecheau v. Equal Employment Practices Comm'n*, No. 13 Civ. 2440 (VEC), 2014 WL
5026142, at *8 (S.D.N.Y. Sept. 30, 2014) ("Plaintiff's March 26, 2012, grievance with the Union
also post-dated the negative performance evaluation complained of in the April 2012 complaint
and was not 'protected activity' under the ADA because the grievance was unrelated to
discrimination on the basis of Plaintiff's alleged disability.").[14]

Second, Washington alleges that Defendants retaliated against Washington for filing an
EEOC complaint against Defendants for unlawful discrimination, in violation of federal, state,
and city law. *See* Compl. ¶¶ 150, 156, 162. Moreover, Washington filed the EEOC charge in
early March of 2016, and she was terminated shortly thereafter, on March 24, 2016. *Id.* ¶¶ 76–
77. Defendants argue, however, that Washington's EEOC complaint was filed *after* the charges
were proffered against and *during* the course of her § 3020-a hearing—a hearing that was
ongoing between January 19, 2016 and March 2, 2016—and that thus her termination was not
retaliatory because where "gradual adverse job actions began well before the plaintiff had ever
engaged in any protected activity, an inference of retaliation does not arise." Defs.' Mem. at 17
(citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). Washington
agrees with the Defendants that there was a gradual course of action that led to her termination,
but argues that "[t]ermination was an outstanding act that was an adverse action taken in
response to Plaintiff's filing of her EEOC complaint." Pl.'s Mem. at 17–18.

Thus, the crucial issue is whether Washington satisfies the *prima facie* requirement to
make out a causal nexus between her complaint to the EEOC and her ultimate termination. The

---

[14] Washington argues, without pointing to any authority, that she has alleged plausible grounds for relief "since
Plaintiff was being subjected to adverse employment actions [as a result of her OSI complaint] . . . which targeted
her disability." Pl.'s Mem. at 18 (emphasis added). However, absent any authority for this proposition, the Court
rejects Washington's argument because she plead no facts to suggest she has made a *prima facie* showing with
respect to the OSI complaint that she "engage[d] in protected activity when she complain[ed] about . . . conduct that
she reasonably believe[d] constitute[d] forbidden discrimination or retaliation." *Bader v. Special Metals Corp.*, 985
F. Supp. 2d 291, 318 (N.D.N.Y. 2013).

only basis Washington suggests for finding such a nexus is temporal. "It is, of course, true that temporal proximity can demonstrate a causal nexus." *Slattery*, 248 F.3d at 95; *see also see Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (stating that "[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.") (internal quotations omitted). But, as in *Slattery*, where the termination was "both part, and the ultimate product of, an extensive period of progressive discipline which began . . . *prior* to [the] filing of the EEOC charges . . . an inference of retaliation does not arise." *Slattery*, 248 F.3d at 95 (internal quotations omitted).

Therefore, for the reasons stated above, the Court GRANTS the motion to dismiss the retaliation claims.

## V.    CONCLUSION

For the above reasons, the Court GRANTS Defendants' motion. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 22, and close the case.

It is SO ORDERED.

Dated:    October 16, 2017
          New York, New York

Edgardo Ramos, U.S.D.J.

23